UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Melvin Prostkoff**

   **v.**                                                        Case No. 05-cv-313-PB
                                                          Opinion No. 2006 DNH 112

**The Paul Revere Life Insurance Co.
and UnumProvident Corporation**


**MEMORANDUM AND ORDER**

    Melvin Prostkoff, M.D., seeks a declaration pursuant to N.H. Rev. Stat. Ann. ("RSA") § 491:22 that the disability income policy issued to him by The Paul Revere Life Insurance Company and its parent company, UnumProvident Corporation (collectively, "Paul Revere"), provides for annual cost of living increases to his monthly disability payment for the duration of his life. The parties have filed cross-motions for summary judgment.[1]  For the

---

[1] Prostkoff also moves to strike several documents submitted by defendants in support of their motion for summary judgment. Prostkoff contends that defendants' submission of the insurance policy contains two pages that post-date the actual policy issued to Prostkoff. Defendants concede that their copy of the policy is merely a specimen copy and not the actual policy issued to Prostkoff. Accordingly, I instead rely upon the copy of the policy submitted as Exhibit A ("Policy") to the Affidavit of Melvin Prostkoff, M.D. ("Prostkoff Aff."). Prostkoff also

reasons set forth below, I grant Paul Revere's motion and deny Prostkoff's motion.

## I. BACKGROUND

### A. The Basic Policy

Prostkoff purchased a Preferred Professional Disability Income Policy ("Policy") issued by Paul Revere on June 3, 1986. Prostkoff Aff. ¶ 1.  The basic policy is non-cancellable and guaranteed continuable to age 65.  Policy at 2.  The Policy protects against the loss of earned income in the event of total disability by providing monthly payments until the insured's 65th birthday.  Id. at 7, 12.

The Policy contains two renewal options with limited benefits payable beyond age 65.  Id. at 2, 47-8.  Under the Part 5 renewal option, an insured who is actively and regularly employed full time may continue the Policy after age 65 for a total disability benefit, with a maximum benefit period of 24 months.  Id. at 47-8.  Because there is no age limit on the Part

---

contends that defendants' exhibits C and E were created during the course of settlement negotiations and thus are inadmissible under Federal Rule of Evidence 408.  Defendants concede that neither document contains any facts material to the resolution of the pending motions, and I do not rely upon them here in analyzing the parties' claims.

5 renewal, an insured may continue the Policy as long as he is actively and regularly employed full time or until he exhausts Part 5 benefits.  Id. at 47.

Under the Part 6 renewal option, an insured who is no longer actively and regularly employed after his 65th birthday may continue his Policy for the rest of his life.  Id. at 48.  This benefit is limited to a Hospital Confinement Indemnity of $50 per day, and such benefit expressly replaces all other benefits under the Policy and any associated riders.  Id. at 48.

The Policy also contains a waiver of premium provision, which states:

> [A]fter You have been Disabled for 90 consecutive days, [Paul Revere] will waive any premium that becomes due while You remain Disabled.  Your policy and its benefits will continue as if the premium has been paid. . . . .
>
> When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

Id. at 19 (emphasis added).  The waiver of premium provision does not apply to any premiums that become due after an insured elects the Part 6 renewal option.  Id. at 19, 49.

The basic policy provides that the "first premium . . . is payable on the Date of Issue.  After that, premiums are payable

in the amount and mode shown on the Policy Schedule." Id. at 18. The policy schedule lists annual premium amounts. Id. at 3. Prostkoff's policy was issued on June 3, 1986. Thus, his annual premium payment becomes due each year on June 3. See id. at 3, 18.

**B.   Policy Riders**

In addition to the basic policy, Prostkoff purchased supplemental riders to provide coverage for future income options, total disability in occupation, supplemental social insurance (the "SSI rider"), automatic benefit increases for certain years, cost of living allowance increases (the "COLA rider"), and full lifetime total disability benefits (the "lifetime benefit rider").[2]  Prostkoff Aff. ¶ 4.

**1.   SSI rider**

Under the SSI rider, Paul Revere pays an added monthly benefit to an insured who qualifies under its terms. Policy at 23. Such payments will be made until "[the insured's] 65th birthday." Id.  The SSI rider ends on the earliest of:

---

[2] There is no dispute over the future income, total disability in occupation, SSI or automatic benefit increase riders.

>    1. The date Your Policy ends; or
>    2. <u>The premium due date following</u>:
>
>       a. The date You begin receiving Social Security retirement benefits; or
>       b. <u>Your 65th birthday</u>.

Id. at 25 (emphasis added).

## 2. **COLA rider**

The COLA rider protects against inflation by providing annual benefit increases to an insured who is collecting on a total disability. Id. at 29-30. To account for increased costs of living, on the 366th day of continued disability the COLA rider provides the insured with an additional benefit of seven percent of the base benefit.[3] Def.'s Mot. Summ. J. at 2. Thereafter, the COLA rider provides for annual increases to the monthly COLA benefit. Specifically, the COLA rider provides:

> [Paul Revere] will pay an added benefit during Your[4] continuous Disability if:
>
>    1. Such Disability starts prior to age 65; and
>    2. The Total or Residual Disability benefit is payable under the Policy to which this rider is added; and

---

[3] The base benefit is "the monthly amount of the Total or Residual Disability benefit payable" under the policy, plus any benefit payable under the SSI rider. Policy at 29.

[4] Throughout the policy, "You" and "Your" refer to the insured. Policy at 11.

> 3. The Disability continues more than 365 days.
>
> This benefit will start on the 366th day of the Disability. This benefit will be paid monthly. The amount we will pay starts at 7 percent of the Base Amount. . . We will later add 7 percent of the Base Amount to the monthly amount of this benefit. We will do this on each anniversary of Your Disability, after the first, while it continues.
>
> <u>No more increases will be made after the first premium due date after Your 65th birthday</u>. . . .
>
> [Paul Revere] will pay this benefit while the Total or Residual Disability benefit continues to be payable.
>
> This rider will end:
>    1. When the Policy ends; or
>    2. On the first premium due date after Your 65th birthday; whichever happens first.

Policy at 29 (emphasis added).

### 3. <u>Lifetime benefit rider</u>

Prostkoff also purchased a lifetime benefit rider, which provides additional benefits after age 65 and for the remainder of his life, so long as he remains totally disabled. <u>Id.</u> at 31; Prostkoff Aff. ¶ 4. The lifetime benefit rider states in pertinent part:

> [Paul Revere] will pay this benefit during Your continuous Total Disability if:
>    1. The Total Disability begins before age 65; and
>    2. The Total Disability continues until age 65; and
>    3. The benefits under the Policy to which this rider is added have been paid during Your Total Disability.

-6-

> This benefit will start to pay on the later of: (a) Your 65th birthday; or (b) the date the Total Disability benefit payable under Your Policy ends. We will pay it while You remain Totally Disabled for as long as You live.
>
> The monthly amount is the amount shown on the Policy Schedule.  <u>Any Cost of Living benefit rider added to Your Policy shall apply to this amount</u>.
>
> . . . .
>
> All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

Policy at 31-32 (emphasis added).

### C.  <u>Procedural History</u>

In October 1990, Prostkoff became totally disabled under the terms of the policy and subsequently began receiving disability benefits.  Prostkoff Aff. ¶ 8; Hoyt Aff. ¶ 13.  After 90 consecutive days of disability, Prostkoff was entitled to a waiver of premium payments, which he continues to enjoy to date. Policy at 19; Prostkoff Aff. ¶ 6.  Accordingly, on each anniversary of the Policy date when Prostkoff's premium becomes due [June 3], Paul Revere waives the premium.  In addition, Prostkoff began receiving the added COLA benefit on his 366th day of disability.  Prostkoff Aff. ¶¶ 6, 10; Hoyt Aff. ¶ 15.

In January 2005, Paul Revere informed Prostkoff that he would not be eligible for additional cost of living increases after June 3, 2014, the date it claimed was the first premium due date after his 65th birthday.  Prostkoff disputed Paul Revere's interpretation and subsequently filed a declaratory judgment action in the New Hampshire Superior Court.  Paul Revere then removed the case to this court on diversity grounds.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

### III. ANALYSIS

The question presented by this case is whether Prostkoff will remain eligible for annual cost of living increases to his monthly disability benefit after he turns 65. Because the answer to this question depends entirely on how I interpret Prostkoff's disability insurance policy, I treat the matter as a question of law. See Catholic Med. Ctr. v. Executive Risk Indem., Inc., 151 N.H. 699, 700-01 (2005).

Paul Revere's argument is straightforward. The COLA rider states that "no more increases will be made after the first premium due date after your 65th birthday." Paul Revere argues that the "premium due date" is the date that the policy holder's annual premium payment is due. Accordingly, it contends that Prostkoff will not be eligible for additional cost of living increases after June 3, 2014, the first premium due date after his 65th birthday.

Prostkoff makes three responsive arguments, none of which is persuasive. First, he argues that the clause that Paul Revere relies on is inapplicable because he will not be subject to a "premium due date" after he turns 65. Prostkoff contends that "premium due date" means the date by which a premium payment is

actually owed.  Because the policy provides that premiums are waived during a period of disability of more than 90 days, Prostkoff argues that no premium will be due — and he will continue to be eligible for annual cost of living increases — for as long as he remains disabled.

Prostkoff's argument is fatally flawed.  It is a basic rule of insurance policy construction that policy provisions generally should not be treated as superfluous, See Int'l Surplus Lines Ins. Co. v. Mfrs. & Merchants Mut. Ins. Co., 140 N.H. 15, 19 (1995), yet Prostkoff's interpretation of "premium due date" does just that.  If he is correct, the provision Paul Revere relies on can never serve as a limitation on a policy holder's right to a cost of living increase because premium payments are always waived when the policy holder is otherwise eligible for cost of living increases.[5]  Because Prostkoff's interpretation of

---

[5] Prostkoff attempts to assign meaning to the challenged COLA provision by constructing a convoluted hypothetical, which, to the extent I can understand it, fails.  Pl. Reply to D.'s Mot. Summ. J. at 1-2.  He contends that the limitation on COLA increases has meaning when applied to a claimant who becomes totally disabled prior to age 65, who then subsequently improves to residual disability status, and thus is still receiving COLA benefits prior to age 65, while working full time but at a substantially reduced income.  This working, yet residually disabled claimant, he argues, may then elect to continue coverage after age 65 under the Part 5 renewal, but is foreclosed from

"premium due date" deprives the COLA rider's limiting language of all meaning, it must be rejected in favor of Paul Revere's more reasonable interpretation.[6]  See Krigsman v. Progressive N. Ins. Co., 151 N.H. 643, 645 (2005).

In his second argument, Prostkoff relies on the lifetime benefit rider to support his contention that he should continue to receive COLA increases after age 65.  Prostkoff argues that the lifetime benefit rider modifies both the basic policy and the COLA rider.  Specifically, he relies on the statement in the lifetime benefit rider that "[a]ny Cost of Living Benefit Rider added to Your Policy shall apply to this amount" in arguing that the lifetime benefit rider overrides the limiting language in the

---

additional COLA increases after 65 because the residual disability benefit makes no mention of COLAs.  Prostkoff misses at least one critical point: once the insured reaches 65, his residual benefits cease, regardless of any renewal under Part 5.  With no benefits payable, there is no COLA benefit to increase and the provision limiting increases remains superfluous.

[6] Prostkoff's argument also overlooks the fact that even the waiver of premium provision he relies on provides that "we will waive any premium <u>that becomes due while You remain Disabled</u>."  Policy at 19 (emphasis added).  This provision would make no sense if Prostkoff were right in arguing that a premium cannot become due if it is waived.  Where the policy terms are clear and unambiguous, as here, I accord them their natural and ordinary meaning.  See Wilson v. Progressive N. Ins. Co., 151 N.H. 782, 788 (2005).

COLA rider.  I disagree.

The lifetime benefit rider provides that the basic benefit payable under the rider is "the amount shown on the policy schedule."  It then adds that "[a]ny Cost of Living benefit rider added to your policy shall apply to this amount."  This language does not modify the COLA rider.  Instead, it merely gives Prostkoff the right to have cost of living increases that are payable under the COLA rider added to the basic benefit payable under the lifetime benefit rider.  Because the COLA rider does not provide for additional increases after Prostkoff turns 65, the lifetime benefit rider does not entitle him to such increases.

Finally, Prostkoff argues that the purpose of the COLA rider is not served by discontinuing increases to the COLA benefit after age 65.  Although I am sympathetic to Prostkoff's concern that his costs of living will continue to increase beyond age 65, I am "not free to rewrite [the policy's] terms by giving them a meaning which they never had."  Catholic Med. Ctr., 151 N.H. at 703 (quotation omitted).  Even if Prostkoff reasonably expected that he would continue to receive COLA increases for the remainder of his life, New Hampshire courts do not "examine the

parties' reasonable expectations of coverage when a policy is clear and unambiguous; absent ambiguity, [the court's] search for the parties' intent is limited to the words of the policy." Godbout v. Lloyd's Ins. Syndicates Messrs. Mendes & Mount, 150 N.H. 103, 105 (2003) (quotation and brackets omitted).

## IV. CONCLUSION

Prostkoff's Motion to Strike (Doc. No. 16) is granted. Paul Revere's Motion for Summary Judgment (Doc. No. 15) is granted and Prostkoff's Motion for Summary Judgment (Doc. No. 14) is denied. The clerk is instructed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

September 29, 2006

cc: Jennifer A. Eber, Esq.
    Byrne J. Decker, Esq.

-13-